No. 25-7510

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

---

**CALIFORNIANS FOR EQUAL RIGHTS FOUNDATION,**

*Plaintiff- Appellant,*

vs.

**MISTY HER, Superintendent of the Fresno Unified School District; and VALERIE F. DAVIS, President of the Fresno Unified School District,**

*Defendants - Appellees*

---

Appeal of the United States District Court
Eastern District of California
Case No. 1:25-cv-00250-BAM

---

## APPELLEES' ANSWERING BRIEF

---

Michael J. Davis, SBN 299196
Camille J. Bosworth, SBN 242466
Atkinson, Andelson, Loya, Ruud & Romo
5075 Hopyard Road, Suite 210
Pleasanton, California 94588-3361
Telephone:  (925) 227-9200
Facsimile:  (925) 227-9202
Email: Mdavis@aalrr.com
Email: Camille.Bosworth@aalrr.com

Attorneys for Defendants-Appellees Misty Her and Valerie F. Davis

- 1 -

56401214.10/005801.00590

TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................8

STATEMENT OF ISSUES PRESENTED .....................................9

STATEMENT OF THE CASE .......................................................9

I.     Background and Procedural History ...................................9

     A.    The Complaint.......................................................10

     B.    The Motion to Dismiss........................................... 14

     C.    District Court Order Dismissing the Complaint.................... 17

          1.    The Complaint Failed to Allege an Injury-In-Fact .... 18

          2.    Traceability and Redressability.................................22

          3.    Ripeness ...................................................................23

     D.    Motion for Reconsideration ..................................23

     E.    Order Denying Reconsideration............................25

STANDARD OF REVIEW....................................................... 26

SUMMARY OF THE ARGUMENT......................................... 26

ARGUMENT ......................................................................... 28

I.     Plaintiff Failed to Establish Article III Standing............................ 30

     A.    The Complaint Pleads No Injury in Fact.............................. 34

          1.    The Complaint Fails to Plead any Concrete or Particularized Injury that is Actual or Imminent ....... 37

          2.    The Complaint Fails to Plead any Actual or Imminent Injury, and Advances Only Conjecture and Hypothesis ...................................................................52

     B.    Traceability.......................................................... 58

i

TABLE OF CONTENTS
(CONTINUED)

Page

C.  Redressability ........................................................................ 59

II.  Ripeness ...................................................................................... 62

III.  The Court Properly Took Notice of the District's Website But Did Not Rely on It to Dismiss the Complaint ......................................... 63

A.  Judicial Notice was Proper Because the Content of the District's Website is Central to Plaintiff's Complaint Allegations ............................................................................. 64

B.  Plaintiff Waived Its Argument Concerning the Presence of Statistics on the District's A4 Program Page ........................ 67

C.  The District Court's Findings on Standing are Independent of the Website Content ................................................................. 69

IV.  In the Alternative, The Claim is Moot ............................................. 71

CONCLUSION ........................................................................................... 73

56401214.10/005801.00590

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Ala. Legis. Black Caucus v. Alabama,*
575, U.S. 254, 263, 575 U.S. . .................................................. 39, 40, 41

*Albuquerque Indian Rights v. Lujan,*
930 F.2d 49 (D.C. Cir. 1991) ................................................. 32

*Bowen v. Energizer Holdings, Inc.,*
118 F.4th 1134 (9th Cir. 2024) .............................................. 26

*Bras v. Cal. Pub. Utilities Comm'n,*
59 F.3d 869 (9th Cir. 1995) ........................................... 20, 46

*Buono v. Norton,*
371 F.3d 543 (9th Cir. 2004) ................................................. 63

*Carney v. Adams,*
592 U.S. 53 (2020) ........................................................... 30, 61

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) .................................................. 17, 31, 42

*Commonwealth of Massachusetts v. Mellon,*
262 U.S. 447 (1923) ............................................................. 33

*Deutsche Bank Nat. Tr. Co. v. F.D.I.C.,*
744 F.3d 1124 (9th Cir. 2014) .............................................. 72

*Feezor v. Sears, Roebuck & Co,*
608 F.App'x. 476 (9th Cir. 2015) ..................................... 21, 57

*Food & Drug Admin. v. All. for Hippocratic Med.,*
602 U.S. 367 (2024) ........................................................ 33, 43

*Franks v. Bowman Transp. Co.,*
424 U.S. 747 (1976) ............................................................. 55

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc.*
528 U.S. 167 (2000) ........................................................ 22, 25

56401214.10/005801.00590

TABLE OF AUTHORITIES
(CONTINUED)

Page

*Friery v. Los Angeles Unified Sch. Dist.*,
448 F.3d 1146 (9th Cir. 2006) ................................................................ 53

*Harrison v. Kernan*,
971 F.3d 1069 (9th Cir. 2020) ..................................................... 47, 48, 49

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) ................................................................................ 33

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ................................................................................ 34

*Int'l Bhd. Of Teamsters v. United States*,
431 U.S. 324 (1977) .......................................................................... 56, 57

*Khoja v. Orexigen Therapeutics, Inc.*,
900, F.3 988, 1003 (9th Cir. 2018) ........................................... 64, 65, 66

*Lehon v. City of Atlanta*,
242 U.S. 53 ............................................................................................. 32

*Loffman v. California Dep't of Educ.*,
119 F.4th 1147 (9th Cir. 2024) .............................................................. 32

*Louisiana v. Callais*,
Supreme Court No. 24-109 ..................................................................... 39

*Lujan v. Defs. of Wildlife*,
504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)
....................................................... 15, 26, 30, 31, 33, 47, 52, 58, 59, 60

*Madsen v. Boise State Univ.*,
976 F.2d 1219 (9th Cir. 1992) ..................................... 32, 37, 38, 49, 53

*Meland v. WEBER*,
2 F.4th 838 (9th Cir. 2021) ............................................................. 47, 63

*Moose Lodge No. 107 v. Irvis*,
407 U.S. 163 ........................................................................................... 32

iv

56401214.10/005801.00590

TABLE OF AUTHORITIES
(CONTINUED)

Page

*N.E. Fla. Chapter of the Associated Gen. Contractors of Am.*
   *v. City of Jacksonville*,
   508 U.S. 656 (1993),.......................................................................20, 45

*Oil, Chemical & Atomic Workers Int'l Union v. Gillette Co.*,
   905 F.2d 1176 (8th Cir. 1990) ...............................................................32

*Parents Involved in Community Schools v. Seattle School
   District No. 1*,
   551 U.S. 701 (2007).........................................................................20, 21

*Raines v. Byrd*,
   521 U.S. 811 (1997).........................................................................30, 55

*Recording Indus. Ass'n of Am. v. Diamond Multimedia Sys.,
   Inc.*,
   180 F.3d 1072 (9th Cir. 1999) ...............................................................26

*Regents of Univ. of Cal. v. Bakke, Regents of Univ. of
   California v. Bakke*,
   438 U.S. 265 (1978).................................................................................43

*San Diego Cnty. Credit Union v. Citizens Equity First Credit
   Union*,
   65 F.4th 1012 (9th Cir. 2023) ...............................................................26

*Scott v. Pasadena Unified Sch. Dist.*,
   306 F.3d 646 (9th Cir. 2002) ...............................................................50

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976)...................................................................................30

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016).........................................................................31, 37

*Students for Fair Admission, Inc., v President & Fellows of
   Harvard Coll.*,
   600 U.S. 181 (2023).................................................................................34

v

TABLE OF AUTHORITIES
(CONTINUED)

Page

*Texas v. Lesage*,
528 U.S. 18 (1999).........................................................................45, 46

*Texas v. United States*,
523 U.S. 296 (1998).............................................................................62

*In re Thorpe Insulation Co.*,
677 F.3d 869 (9th Cir. 2012) ...............................................................72

*Tritz v. U.S. Postal Serv.*,
721 F.3d 1133 (9th Cir. 2013) .......................................................26, 70

*Unified Data Servs., LLC v. Fed. Trade Comm'n*,
39 F.4th 1200 (9th Cir. 2022) ..............................................................26

*United States v. Baugh*,
187 F.3d 1037 (9th Cir. 1999) .............................................................53

*United States v. Hays*,
515 US 737 (1995), *United States v. Hays*, 515 U.S. 737
(1995)...............................................................................................39, 40

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ..........................................................64, 66

*Valley Forge Christian College v. Americans United for
Separation of Church and State, Inc.*,
454 U.S. 464 (1982)..............................................................................63

*Wilbur v. Locke*,
423 F.3d 1101 (9th Cir. 2005), abrogated on other grounds
by *Levin v. Com. Energy, Inc.*, 560 U.S. 413 (2010)...........................70

**OTHER AUTHORITIES**

California Department of Education,
DataQuest:https://dq.cde.ca.gov/dataquest/dqcensus/EnrEt
hYears.aspx?cds=1062166&agglevel=district&year=2024
-25 (Last accessed March 24, 2026) ....................................................39

vi

vii

## TABLE OF AUTHORITIES
### (CONTINUED)

Page

https://www.fresnounified.org/departments/a4 (last Accessed
March 26, 2026).................................................................................. 71

vii

56401214.10/005801.00590

## INTRODUCTION

Appellant Californians for Equal Rights Foundation ("CFER" or "Plaintiff") advances, on behalf of its members and their six children, a generalized grievance concerning the marketing of a suite of former Fresno Unified School District programs referred to as the A4 Programs. Plaintiff's members' children do not allege that they are interested in the programs, that they are "ready and able" to participate, that there is any actual barrier to their participation, that they were denied access to the program, or that they were otherwise deprived of any educational opportunity at all. Without an injury-in-fact, and without facts demonstrating an actual case or controversy, Plaintiff fails to allege Article III standing.

Standing requires a *de facto* injury-in-fact, and a speculative "injury-in-theory" is insufficient to satisfy the jurisdictional requirements of Article III. Plaintiff appeals the District Court's dismissal of its Complaint for failure to establish both standing and a ripe controversy. However, the District Court applied the well-established and proper standards for standing, ripeness, and judicial notice, and there are no grounds to disturb its sound order.

56401214.10/005801.00590

The District Court was correct to dismiss its Complaint for lack of standing and for failure to allege a ripe controversy, and this Court should affirm that dismissal.

## STATEMENT OF ISSUES PRESENTED

1. Whether Article III standing in an equal protection or Title VI case requires a concrete, particularized injury that has actually occurred or is certainly impending; or, whether a Plaintiff's subjective apprehension of potential unequal treatment is sufficient to establish standing.

2. Whether Plaintiff sufficiently pleaded an "injury-in-fact" to establish standing where the Complaint allegations are conclusory, speculative, generalized, and not tied to any concrete or actual harm experienced by Plaintiff or its identified association members.

## STATEMENT OF THE CASE

### I. Background and Procedural History

This case is before the Court on appeal from the District Court's Order dismissing the Complaint in Case 1:25-cv-00250-BAM for lack of standing and for lack of ripeness. The District Court granted Defendants' Motion to Dismiss and denied Plaintiff's Motion for Reconsideration. This appeal followed.

- 9 -

## A.       The Complaint

Plaintiff, on behalf of three of its members who have children enrolled in Fresno Unified School District ("District"), filed a Complaint on February 27, 2025 against Fresno Unified School District Superintendent Misty Her and Board President Valerie Davis ("Defendants" or "Appellees") alleging violations of the Equal Protection Clause of the Fourteenth Amendment; Title VI of the Civil Rights Act of 1964; and article I, section 31 of the California Constitution.

Plaintiff alleged that its members have children who are not African American and "are eligible for or would benefit from the same types of academic support offered by the A4 Office Programs."  ER-131.

CFER Member "A" is a parent of two children, one of whom attends Fresno Unified's Robinson Elementary School. *Id.*  Plaintiff alleged that "although that child would likely be interested in the A4 Office's programs, neither Member A nor his child was ever informed of the A4 programs."  *Id.* [emphasis added].

CFER Member "B" has three children who attend Fresno Unified School District at Fresno High School, Bullard Talent K-8 School, and

- 10 -

56401214.10/005801.00590

Hamilton K-8 school. Plaintiff alleges that "[a]lthough her children would be interested in the A4 Office's programs, neither Member B nor any of her children were ever informed of the programs." *Id.* [emphasis added]

CFER Member "C" is a parent of two children who attend Bullard High School and Tenaya Middle school. "Although her children would likely be interested in the A4 Office's programs, neither member C nor any of her children were ever informed of the programs." *Id.* [emphasis added].

The Complaint alleges that there are statistical disparities in academic performance among identified racial and ethnic groups in Fresno Unified. ER-132 "For example, while overall 22% of the district's elementary students read at grade level, 38% of White students, 25% of Asian students, 21% of Hispanic students, 21% of American Indian students, and 16% of African American students read at grade level." *Id.*

The Complaint alleges that, in 2017, in response to these statistical disparities, Fresno Unified created the Office of African American Academic Acceleration (A4) to "address the disparities in academic outcomes faced by African American students." ER-132.

- 11 -

The Complaint alleges the existence of approximately thirteen programs and incorporates website hyperlinks to the then-existing District website for the A4 programs. ER-133.

The Complaint alleges that "[o]fficial descriptions, advertisements, and District communications brand these programs as being 'for African Americans'-and do not indicate that non-African American students are welcome." ER-133. However, the same District website for the A4 program that was incorporated into the Complaint by reference included a statement that "A4 has served 7,950 students of all racial and ethnic backgrounds." *See* ER-133, ER-125, ER-92, ER-69-70.

The Complaint alleges that teachers invite their African American students to participate in the A4 programs and do not encourage or inform-non-black students, even if they are in similar academic need. However, the Complaint does not make any particularized factual allegation, nor any allegation that implicates any of the children of CFER's members, including the existence any eligibility requirements or criteria for participation in the program, whether member's child met those requirements or criteria, whether the member's child or the member sought or would have sought the type of

- 12 -

56401214.10/005801.00590

services allegedly offered by the District, the academic needs of any of the members' children, or which programs would or could serve those needs.

The Complaint alleges that "[n]on-[B]lack students who learn about A4 programs are directed to other extracurricular offerings because of their race." ER-133. However, the Complaint does not allege that any of the Members or their children were the recipients of this direction, nor that they exposed to any sort of treatment at all, on the basis of race or otherwise.

The core theory of the Complaint is set forth at paragraph 29, which reads "CFER has members whose children would benefit from these programs but have not received (and reasonably believe they will never receive) the same outreach or invitation offered to [B]lack students. Even if they had learned about the A4 programs, they and their children are not made to feel welcome because of their race." ER-134. Essentially, the CFER Members allege that they were not told about the A4 program, and even if they were, they would not feel welcome on the basis of race.

Despite alleging the existence of the A4 programs, thereby demonstrating their actual knowledge of the existence of the programs,

- 13 -

the Complaint makes no allegation that any of the CFER members nor any of their children is actually interested in the A4 programs, has made any effort to participate in the A4 programs, was denied the opportunity to participate, was diverted to another program after expressing their interest, or otherwise took any action or step to inquire about or actually participate in the challenged programs.

Further the Complaint alleges no facts to support the conclusion that the Members' children would feel unwelcome on the basis of race, whether that is due to the member and/or their children's own subjective feelings or due to an articulable action of another individual.

Instead, the Complaint simply alleges a dispute with the A4 program marketing and outreach and a general sentiment that the CFER members' children would not feel welcome in the A4 programs.

## B.    **The Motion to Dismiss**

On April 21, 2025, the District filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that Plaintiff failed to establish Article III standing both for failing to allege an injury in fact and because the Complaint failed to allege a ripe controversy.

///

- 14 -

The Motion to Dismiss highlighted the fact that the Complaint challenges the existence of the A4 programs without demonstrating any impact to any legally protected interest of the CFER members and that the Complaint effectively sought an advisory opinion from the Court. ER-124.

Specifically, the Motion to Dismiss argued that the Complaint was based on conjecture, speculation and a generalized grievance, not the "particularized" and "concrete" harm required for Article III standing as set forth in *Lujan v. Defs. of Wildlife*, 504, U.S. 555, 560-61 (1992). ER-124. Plaintiff did not allege any denial of educational opportunity, denial from placement, exclusion from any program (on the basis of race or otherwise), nor any other disparate treatment. ER-125. Instead, the Complaint is comprised of conjecture about what might happen if the children of Plaintiff's members had, hypothetically, sought to engage in any of the A4 programs described in the Complaint. ER-125.

In addition, because the Complaint failed to allege any actual interest on behalf of Plaintiff's Members or their children, any willingness or steps to seek admission or participation in the program, or that they have been denied any educational benefit, the claim was

- 15 -

unripe.  ER-126.

Plaintiffs opposed the Motion to Dismiss, maintaining that it had adequately alleged a concrete and particularized injury by describing a denial of equal treatment resulting from imposition of a barrier.  ER-110.  In support thereof, Plaintiff relied on selective quotations from *N.E. Fla. Chapter of the Associated Gen. Contractors of Am. V. City of Jacksonville*, 508 U.S. 656 (1993); *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324 (1977); *Students for Fair Admission, Inc., v President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023); *Bras v. Cal. Pub. Utilities Comm'n*, 59 F.3d 869 (9th Cir. 1995); *Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701 (2007); *Christa McAuliffe Intermediate School PTO, Inc. v. DeBlasio*, 364 F.Supp.3d 253 (S.D.N.Y), aff'd, 788 F.App'x 85 (2d Cir. 2019), and others.  ER-109-15.

Defendants replied, underscoring that an alleged *potential* interest in a publicly offered program is insufficient to establish an "injury," unless paired with "(1) a concrete, particularized invasion of a legally protected interest; which is (2) 'actual or imminent, not 'conjectural or hypothetical."  ER-92. In addition, Plaintiff's voluntary exclusion from any program cannot serve to manufacture standing.  *Id.*

- 16 -

citing *Clapper v. Amnesty Int'l USA*, 568, U.S. 398, 416 (2013) ("[R]espondents cannot manufacture standing by inflicting harm on themselves based on their fears of hypothetical future harm that is certainly not impending.")

Defendants' Reply further addressed the authority advanced by Plaintiff in their Opposition, highlighting that the cases cited by Plaintiff involved plaintiffs that were "ready and able" to compete and were subjected to a system that imposed unequal terms of access or competition—something noticeably absent from the Complaint. ER-95.

## C.    District Court Order Dismissing the Complaint

The District Court found that Plaintiff failed to establish standing and, independently, that its claims were not ripe for adjudication. ER-73.

The District Court agreed that the Complaint allegations were not sufficiently concrete and particularized to establish standing. ER-74. The District Court found that the Complaint contained no factual allegations that the Plaintiff's members' non-African American children were denied access to an A4 program on the basis of race, that any of the members or their children were actually directed to non-A4

- 17 -

programs on the basis of race, or were made to feel unwelcome based on race. ER-75. Instead, the Complaint relied on "general and conclusory allegations that are not 'concrete and particularized' and do not affect [Plaintiff's] members 'in a personal and individual way." ER-75.

### 1. The Complaint Failed to Allege an Injury-In-Fact

The District Court found that the Complaint allegations failed to demonstrate a "personal stake" in the case that affected the members in a personal and individual way, as the Complaint did not contain any specific factual allegations relating to any member or their child "specifically or individually." ER-76. Instead, the "allegations are generic to any non-African American student in Fresno Unified, not to any of [the] named members specifically." ER-76. This amounts to a "generalized grievance," which is insufficient to establish standing. ER-76. Similarly, the Complaint does not allege how the members were specifically harmed beyond "generalized grievances based on speculation that [the] members' children would have felt unwelcome." ER-76.

The District Court further found that the Complaint did not sufficiently allege an injury that is "actual or imminent." ER-77. The

- 18 -

District Court rejected Plaintiff's position that prospective relief requires only an allegation that the injury its members allege is likely to occur in the future. While the Complaint "alludes to *possible* future injury" it did not "specifically allege that any of its members' children are facing a 'certainly impending' injury." ER-77. The District Court found that allegations of a possible future injury are insufficient to satisfy the requirements of Article III. ER-77.

Similarly, the District Court agreed with Defendants that Plaintiff "asserts only conjectural, hypothetical, or conclusory allegations that are, alone, insufficient to establish standing" and that speculative injury is insufficient to satisfy the Article III requirement of actual or imminent injury. *Id*.

The District Court distinguished the authority relied upon by Plaintiff in support of its position that "its members need not have applied to the A4 programs and been denied based on race to have suffered an injury sufficient to establish standing" from the allegations in the Complaint. ER-80-83.

In *Ne. Fla. Chapter of Associated Gen. Contractors of Am*, 508 U.S. at 666, the District Court explained that the plaintiff was able to bring an equal protection claim because it was able to "demonstrate that

- 19 -

it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 657, 113 S. Ct. 2297, 2298, 124 L. Ed. 2d 586 (1993). It was the "inability to compete on an equal footing in the bidding process" that constituted the cognizable injury in fact. *Id.*; ER-81.

The District Court recited that, in *Parents Involved in Cmty. Sch. V. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007), the Supreme Court characterized the plaintiff's injury as "being forced to compete for seats at certain high schools in a system that uses race as a deciding factor…" and "being forced to compete in a race-based system that may prejudice the plaintiff." ER-81 (citing *Parents Involved,* 551 U.S. at 719. Likewise, in *Bras v. Cal. Pub. Utils. Comm'n*, 59 F3d. 869 (9th Cir. 1995), the plaintiff was required to show "that they are forced to compete on an unequal basis." ER-82 (quoting *Bras*, 59 F.3d. at 873).

The District Court found that the Complaint "does not allege that any A4 Office program requires a competitive application or utilizes a quota or proportion system for participation based on race. ER-82. As such, the Complaint did not allege that the members were "forced to compete in a race-based system that may prejudice them." ER-82,

- 20 -

56401214.10/005801.00590

(citing *Parents involved*, 551, U.S. at 719.). The District Court, relying on the authority advanced by Plaintiff, found that Plaintiff must allege more than "exposure to unequal treatment alone" to establish standing. ER-83.

Finally, the District Court addressed the conclusory nature of the Complaint allegations. Plaintiff maintained that the allegations that non-African American students are made to feel unwelcome through the design of the program, and that "nothing requires students to show up at programs at which they are not welcome in order to establish injury." ER-83. However, the District Court disagreed.

The District Court found that the Complaint failed to allege factual support for the premise that it would have been a futile gesture for any of the member children to attempt to join an A4 program. ER-83-84. Relying on Ninth Circuit precedent in *Feezor v. Sears, Roebuck & Co*, 608 F.App'x. 476, 477 (9th Cir. 2015), the District Court noted that "conclusory allegations of deterrence are insufficient" to establish standing based on a deterrence theory. ER-84. The District Court found that the allegations set forth at ¶¶ 11-13 and 26-27 "are conclusory allegations without factual support that the identified students were actually deterred." ER-84. Even applying a generous

- 21 -

pleading standard, the District Court found that Plaintiffs did not plead sufficient factual support to establish the required injury-in-fact for standing. ER-85.

### 2. Traceability and Redressability

The District Court also addressed the traceability and redressability requirements for standing. ER-85-86. The District Court found that the Complaint "fails to allege sufficient factual support to establish that its members or their children would suffer any cognizable injury that would be fairly traceable to Defendants' challenged actions" and failed to establish any traceable injury under Article III. ER-85.

Further, Plaintiff made "no nonconclusory factual allegations that its members' children are actually eligible to participate in any A4 program based on age or demonstrated need, that they would actually benefit from the programs, or that any of the members would 'stand to profit in some personal interest' if there was a favorable decision by the Court." ER-86.

Applying the principles of organizational standing as articulated in *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs, (TOC), Inc.* 528 U.S. 167, 181 (2000), and others, the District Court found that Plaintiff "has not met its burden of alleging that its members have standing in

- 22 -

this action, [Plaintiff] cannot establish that it has standing to pursue these claims." ER-86.

### 3. Ripeness

The District Court independently found that all claims should be dismissed because they are not ripe for adjudication. ER-87. The District Court found that Plaintiff's "claims are contingent on a number of factors that may or may not occur." ER-87. These include eligibility for participation in one of the A4 programs and the desire to participate in and attend the programs. ER-87-88. In addition, there were no allegations concerning hardship that the members' children could face from not participating in the A4 programs. ER-88.

The District Court found "based on the allegations included in [the] Complaint, that this matter is not ripe for adjudication." ER-88. The Complaint was dismissed with leave to amend. ER-89.

### D. Motion for Reconsideration

Plaintiff filed a Motion for Reconsideration on August 26, 2025, principally challenging the District Court taking judicial notice of the A4 website and its contents. Plaintiff's challenge was based on the conclusory allegation that the content of the A4 website changed *after* the Complaint was filed. To support this contention, Plaintiff provided

screen captures taken by the Wayback Machine from December 5, 2024 and March 22, 2025. ER-42-43. Plaintiff argued that the content of the webpage at the time of filing should be considered, and alleged that it was error for the Court to take notice of the website content as true. ER-45-47.

Defendants opposed the Motion to Reconsider, arguing that the District Court properly took judicial notice of the content of the website, which was incorporated into the Complaint and relied upon heavily by Plaintiff in making its Complaint allegations. ER-27-28. The District Court did not materially rely on the incorporated website content in its Order dismissing the Complaint, and that, even if it had not considered the website content, the Court would have reached the same conclusion due to the deficiency of the Complaint allegations. ER-29. Further, Defendants argued that there was no new evidence warranting reconsideration, and that Plaintiff's speculation about website content and changes thereto was unsupported by any fact. ER-32.

Plaintiff replied, arguing, again without factual support, that the A4 website was materially changed after the Complaint was filed. ER-17.

- 24 -

### E.  Order Denying Reconsideration

In its Order Denying Reconsideration, the District Court reiterated its finding that Plaintiff failed to satisfy Article III's standing requirements.  ER-11.  Because Plaintiff failed to plead a concrete or particularized injury, any actual or imminent injury, any "certainly impending" injury, and because it relied on conclusory allegations insufficient to show deterrence, Plaintiff failed to establish an injury-in-fact.  ER-11.

In addition, Plaintiff failed to establish the traceability and redressability elements of standing.  *Id.*  "These grounds for the Court's ruling were not dependent upon the statistical information found for the A4 programs.'  *Id.*  Independently, the Court found that Plaintiff failed to show that the claims were ripe for adjudication. *Id.* The District Court did not find that the Motion for Reconsideration warranted the "extraordinary remedy" under Rule 59(e).  ER-11-12.

The District Court also denied the Motion for Reconsideration under Rule 60(b), as Plaintiff failed to demonstrate the extraordinary circumstances required to justify relief under Rule 60(b)(6). Ultimately, the District Court reiterated that "the Courts ruling was not dependent upon the statistical information found on the website for the A4

- 25 -

programs and Plaintiff has been granted leave to amend." ER-12.

## STANDARD OF REVIEW

The Court of Appeals reviews a District Court's dismissal under Rule 12(b)(1) for lack of standing *de novo*." *Bowen v. Energizer Holdings, Inc*., 118 F.4th 1134, 1142 (9th Cir. 2024) citing *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1209 (9th Cir. 2022); *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1022 (9th Cir. 2023).

The Court "may affirm the District Court's dismissal on any grounds supported by the record." *Tritz v. U.S. Postal Serv*., 721 F.3d 1133, 1136 (9th Cir. 2013); *Recording Indus. Ass'n of Am. v. Diamond Multimedia Sys., Inc*., 180 F.3d 1072, 1077 n. 3 (9th Cir. 1999).

## SUMMARY OF THE ARGUMENT

Plaintiff cannot establish an injury-in-fact based on speculative future injury alone. Standing requires an injury-in-fact that is particularized, concrete and either actual or imminent. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 112 S. Ct. 2130, 2134, 119 L. Ed. 2d 351 (1992).

Plaintiff fails to allege a concrete, particularized injury. Instead, Plaintiff raises a speculative challenge based solely on the marketing of

- 26 -

the A4 programs generally, with no personal connection to its members that would distinguish them from any other of the non-African American students—a group that comprises 92.5% of District enrollment.

At most, Plaintiff raises a concerned bystander claim and seeks an advisory opinion about some future harm that may, one day, materialize. The federal courts do not issue such opinions nor grant standing to concerned bystanders.

Finally, Plaintiff's challenge to the District Court's taking of judicial notice is unsupported by the record and the District Court's clear articulation of the basis of its decision, wholly separated from the matters properly noticed. The record supports affirming the District Court's order on a number of grounds and the lower court's dismissal should not be disturbed.

In the alternative and without waiving the foregoing, should the Court find that Plaintiff established both standing and ripeness during the original District Court proceedings, the complained-of marketing no longer exists, rendering this case moot on constitutional and prudential grounds. Accordingly, the appeal should be dismissed.

///

## ARGUMENT

The District Court's dismissal should be affirmed, and Plaintiff's attempt to expand the scope of the Court's Article III jurisdiction to include speculative bystander claims should be rejected.

While Plaintiff challenges the "design and promotion" of the District's former A4 programs, Plaintiff has not pleaded any particularized and concrete injury to any of its members or their children. It claims that "exposure" to unequal marketing as a non-African American student is sufficient to establish an injury; however, in doing so, it fails to particularize the injury beyond a general grievance that it has chosen to advance on behalf of three parents of non-African American students.

In addition, Plaintiff seeks to be excused from any attempt to access the challenged programs, despite having knowledge of them. This voluntary exclusion cannot serve as a substitute for a *de facto* injury-in-fact, which is what the law requires for Article III standing.

Standing requires concrete, particularized, and actual injury— not speculation about what might happen in the future. The Complaint failed to allege any actual injury and, instead, advances a generalized grievance about the design of a program that Plaintiff's members were

- 28 -

56401214.10/005801.00590

not interested in, did not seek to participate, were not denied entry to, and were otherwise not personally impacted by the existence marketing thereof.

The Complaint allegations about what *might* happen if the members were, one day, perhaps interested in participating in the programs likewise fails to allege a ripe controversy. The Complaint was properly dismissed and that dismissal should be affirmed in light of the well-established precedent requiring a concrete, particularized injury-in fact.

In the alternative and without waiving the foregoing, if the Court were to find that Plaintiff adequately established both standing and ripeness, this appeal should be dismissed as moot. Plaintiff's challenge here is mooted by the fact that the complained-of marketing and former A4 program no longer exist. Accordingly, even if the Court finds that there was standing and a ripe controversy when the Complaint was filed, circumstances have evolved such that no case or controversy currently exists, and the case is moot on both constitutional and prudential grounds.

///

///

- 29 -

## I. **Plaintiff Failed to Establish Article III Standing**

The District Court correctly found that the Plaintiff failed to establish an injury in fact and properly dismissed the Complaint. Plaintiffs here seek to expand the scope of standing by eliminating any requirement that the complained-of injury be particularized or actual. Rather, Plaintiffs' position would erode the gatekeeping function of Article III and allow for actions based on generalized grievances, in direct contrast to controlling Article III precedent.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)). The "case or controversy" clause "require[s] that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020).

Standing under Article III has three essential components. First, there must be an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, … and (b) 'actual or imminent', not 'conjectural' or 'hypothetical…'" *Lujan v. Defs. of*

- 30 -

*Wildlife*, 504 U.S. 555, 560–61 (1992).  Second, there must be a causal connection between the injury and the actions of the defendant. Ibid. Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Ibid*.  Plaintiff bears the burden of establishing these three elements.  *Ibid*.

"A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), as revised (May 24, 2016).  "Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. at 341.

Additionally, "[t]hreatened injury must be certainly impending to constitute injury in fact," and "[a]llegations of possible future injury" are not sufficient.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). A plaintiff cannot "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is certainly not impending."  *Clapper* 568 U.S. at 416.

"The Supreme Court has interpreted this rule in discriminatory barrier cases to require that plaintiffs are 'able and ready' to pursue the

- 31 -

56401214.10/005801.00590

opportunity at issue." *Loffman v. California Dep't of Educ.*, 119 F.4th 1147, 1159 (9th Cir. 2024). Being "ready and able" can be demonstrated by a plaintiff's application or similar evidence of actual intent to pursue the sought-after benefit.

"There is a long line of cases… that hold that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit." *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) (*citing, inter alia*, *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–71(1972) ("appellee was not injured by [the] membership policy since he never sought to become a member." 407 U.S. 163 at 167); *Lehon v. City of Atlanta*, 242 U.S. 53, 56(1916) ("To complain of a ruling, one must be made the victim of it.") *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 56 (D.C. Cir. 1991) ("Mere "interest"… is not sufficient to confer standing." [internal punctuation omitted]); *Oil, Chemical & Atomic Workers Int'l Union v. Gillette Co.*, 905 F.2d 1176, 1177 (8th Cir. 1990). "The formal application requirement—as our caselaw establishes—presents a bright line separating those who have suffered from the challenged policy and those who have not." *Id.* at 1222.

///

56401214.10/005801.00590

"[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan,* 504 at 573–74.

"Article III standing 'is not to be placed in the hands of 'concerned bystanders,' who will use it simply as a 'vehicle for the vindication of value interests.'" *Hollingsworth v. Perry*, 570 U.S. 693, 707, (2013). Accordingly, "a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381, (2024). Rather, the Court has consistently required that standing requires a party to have a personalized injury with a direct stake in the outcome of the case. *Hollingsworth* at 705-706, *citing, inter alia, Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the [judicial] power must be able to show… that he has sustained or is immediately in danger of sustaining some direct injury …and not merely that he suffers in some indefinite way in common

- 33 -

56401214.10/005801.00590

with people generally.").

As an organization, Plaintiff only has standing if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023); *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). If the organization's members do not have standing, neither does the organization.

## A.  The Complaint Pleads No Injury in Fact

The Complaint allegations fail to plead any actual injury to Plaintiff's members or their children. Instead, it challenges the existence of the A4 Programs generally and the District's marketing efforts.

There are no allegations of any actual barriers to entry, any application made by Plaintiff's members, any other effort to obtain access to the A4 programs, any race-based quotas, demonstrated history of race-based exclusion, or other formalized race-based policy precluding equal access to educational programs. Rather, Plaintiff

56401214.10/005801.00590

advances the conclusory statement that its members would feel unwelcome based on their race, without reference to any facts giving rise to that conclusion. Because the Complaint is effectively a generalized grievance of complained illegality, rather than allegations of a particularized, concrete and actual injury, Plaintiff has failed to satisfy the standing requirement of Article III.

In this appeal, Plaintiff advances an incorrect theory of "injury-in-fact" in equal protection matters based on a selective and incomplete excerpts of the cases it relies on. Plaintiff relies on cases involving university admissions, school selection, public contracting and racial gerrymandering to advance the proposition that "personal subjection" of an individual to a racial classification alone causes injury. See AOB at 16.

However, Plaintiff overlooks and omits crucial and material points—in the cited cases that involved a plaintiff with standing, that plaintiff was (1) actually, personally and directly subjected to a formal rule or policy (2) ready and able to compete or participate within a competitive or otherwise closed system that (3) subjected to a *de facto* injury based on a prohibited characteristic.

Here, there is no allegation that any of Plaintiff's members were

- 35 -

actually and personally subjected to a race-based classification; there are no pleaded facts to suggest any actual disadvantage or injury; and there are no allegations suggesting the existence of a competitive program where race is used to disadvantage anybody, or any race-based policy, rule or regulation.

Instead, Plaintiff's claims relate to the marketing of the A4 programs and alleged unequal outreach. Plaintiff's members are aware of the programs they complain of, as evidenced by the fact that they filed a Complaint in the federal District Court to challenge their existence. With that knowledge, there are no allegations that Plaintiff's members' children have any actual interest, that they are "ready and able" to participate in the challenged programs, that they have sought to access any of the challenged programs, that they have been denied access to any of those programs, or have otherwise been personally impacted in any way.

Such speculative injuries based on a chain of events that may never occur, fails to satisfy the standing requirement of Article III. Accordingly, the District Court's dismissal should be affirmed.

///

///

- 36 -

### 1. The Complaint Fails to Plead any Concrete or Particularized Injury that is Actual or Imminent

The District Court correctly found that the Complaint contained no factual allegations that Plaintiff's members' children were actually denied access to an A4 program on the basis of race, that they were directed to a non-A4 program on the basis of race, or were made to feel unwelcome due to any specific acts because of their race. ER-75. "Instead, [Plaintiff] relies on general and conclusory allegations that are not 'concrete and particularized' and do not affect [Plaintiff's] members 'in a personal and individual way." *Id., citing Spokeo,* 578 U.S. at 339. Applying the correct standards set forth in *Lujan* and *Spokeo*, the District Court properly dismissed the Complaint, and the Court should affirm for the reasons set forth in the District Court's Order. *See* ER-66-89.

Plaintiff members' failure to apply or seek admission to the challenged programs precludes standing. *Madsen,* 976 F.2d at 1220. Requiring a party to actually apply to a challenged program serves a number of important purposes. For example, "it establishes the existence of a well-defined controversy between the parties. *Id*. at 1221.

- 37 -

56401214.10/005801.00590

In the case of an institutional defendant, "a formal application, complaint or petition for relief assures that those in charge are aware of the problem and have a fair opportunity to resolve it." *Ibid*; s*ee also Clapper,* 568 U.S. at 408 (Article III standing advances separation of powers principles). Importantly, "requiring a formal application as the normal prerequisite for bringing a case to court limits those who can claim injury from a policy that may not have harmed them at all…." *Madsen*, 976 F.2d at 1222. The application "presents a bright line separating those who have suffered from the challenged policy and those who have not." *Ibid*.

Plaintiff's members and their children have not applied nor sought to engage in the challenged programs and, as such, are unable to allege that they have suffered an injury as a result. *See Ibid.* Plaintiff advances an abstract theory of potential future harm without any allegations that its members sought to access the A4 program, were denied access to the program, or suffered any other particularized actual injury.

Instead, Plaintiff attempts to manufacture standing out of a generalized grievance. To do so, it relies on selective excerpts of authority to bypass the requirement of a *de facto* personalized, concrete,

- 38 -

56401214.10/005801.00590

and actual injury, and to excuse the absence of allegations particularizing the alleged harm in a way that differentiates the members' six (6) children from any of the other approximately 65,808 non-African American students at the District.[1]

First, Plaintiff points to *Ala. Legis. Black Caucus v. Alabama*, 575, U.S. 254, 263 (2015) to claim that "personal subjection" of an individual to a racial classification injures them sufficiently to establish standing "by seeing them through a racial lens and subjecting them to a disadvantage." AOB at 16. However, this assertion ignores the context and relevant circumstances present in *Alabama*, specifically as it relates to the direct and particularized nature of the injury in the case.[2]

---

[1] For the 2024-25 academic year, Fresno Unified School District's enrollment was 71,151 with student demographics comprised of 7.5% African American; .7% American Indian or Alaskan Native; 10.6% Asian; .3% Filipino; 69.6% Hispanic or Latino; .4% Pacific Islander; 7.6% White; and 3.25 Two or More Races. (Source: California Department of Education, DataQuest:https://dq.cde.ca.gov/dataquest/dqcensus/EnrEthYears.aspx?cds=1062166&agglevel=district&year=2024-25 (Last accessed March 24, 2026).) Based on this data, the 2024-25 African American enrollment was approximately 5,336 (and non-African American enrollment was approximately 65,814.

[2] The Supreme Court is expected to issue its Opinion in *Louisiana v. Callais*, Supreme Court No. 24-109, where the State of Louisiana has challenged the standing principles articulated in *United States v. Hays*, 515 US 737 (1995) and requested that the Supreme Court overrule *Hays* and its progeny. (Supreme Court No. 24-109, Brief of Appellant, p. 29). The standing principles set forth in *Alabama* rely on *Hays*. Accordingly, the Court's Opinion in *Callais* may impact the standing principles articulated in *Alabama*

- 39 -

*Alabama* addressed associational standing in a racial gerrymandering case. In such a case, the "nature of the harms that underlie a racial gerrymandering claim… are personal. They include being 'personally ... subjected to [a] racial classification,' [citation], as well as being represented by a legislator who believes his 'obligation is to represent only the members" of a particular racial group[.] *Alabama,* 575 U.S. at 263. In so finding, the Supreme Court explained "[t]hey directly threaten a voter who lives in the district attacked. But they do not so keenly threaten a voter who lives elsewhere in the State. Indeed, the latter voter normally lacks standing to pursue a racial gerrymandering claim." *Id.,* (citing *United States v. Hays*, 515 U.S. 737, 744-745 (1995)). As the District Court correctly found, Plaintiff failed to plead any personal impact on behalf of its members, and certainly did not plead any non-conclusory fact supporting a "disadvantage." ER-75.

A gerrymandering case, like *Alabama*, involves the right to vote for candidates within a specific district—an inherently competitive process. Racial gerrymandering claims seek to address an actual injury to a voter in the gerrymandered voting district—a participant in the

---

and as analyzed in this Answering Brief.

competitive electoral process—which is personal and ongoing, and where their right to both elect a candidate and to be represented in a particular district is disadvantaged on the basis of race. The voter, in such a case, is subjected to a racial classification and is then subjected to an injury-in-fact traceable to the improper classification. *Alabama*, 575 U.S. at 263.

Applying *Alabama* to the facts of this case, Plaintiff and its members are more akin to the out-of-district observers of a potential gerrymandering claim, where they themselves would have no standing because they are not personally impacted and suffer no injury from the alleged wrong or illegality. Here, the Complaint fails to allege that the rights of Plaintiff's members' children have actually been interfered with. They have suffered no articulable harm or other denigration of their ability to access public educational programs.

The allegations concerning Members A, B, C and their children are framed in a conditional manner. Member A and C's children "would likely" be interested in the A4 programs, while Member B's child "would" be interested in the programs. ER-131. As pleaded, the interests of the members and their children are attenuated from the operation of any challenged program due to their conditional interest in

- 41 -

the program.

Though Plaintiff's members and their children have apparent knowledge of the A4 programs, they have not sought to access or otherwise participate in the programs. Where the members and/or their children here have self-excluded from participation, such voluntary exclusion cannot substitute for an injury sufficient to establish Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. at 416.

This conditional, but not actual, interest or (attempted) participation in the challenged programs is inconsistent with a finding that the member's children are "ready and able" to participate, which is an essential element of the equal protection cases relied on by Plaintiff.

Notwithstanding its failure to plead a concrete and particularized injury, Plaintiff would claim that the existence of the program and its marketing is enough to establish Article III standing. Essentially, that the alleged lack of direct marketing to non-African American students constitutes sufficient "unequal treatment" to establish standing. However, such an allegation constitutes a generalized grievance without a direct and personal stake by Plaintiff's members.

Plaintiff advances the theory that "racial classifications and racial disadvantage…is enough to give rise to injury sufficient for Article III

- 42 -

standing." AOB at 16. However, Plaintiff fails to allege that any of its members' were actually subjected to a racial classification nor that they suffered any actual disadvantage, or would imminently suffer a disadvantage, as a result.

Plaintiff cites to *Regents of Univ. of Cal. v. Bakke* to explain that, in the context of medical school admissions, the "injury arose as soon as the University decided 'not to permit Bakke to compete for all 100 places in the class." AOB at 16-17. However, Plaintiff ignores crucial context—*Bakke* was involved in a competitive admissions program where 16 of the 100 places in the entering class were formally reserved for minority applicants. *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 266 (1978). The plaintiff in *Bakke* was ready and able to compete for admissions, actually applied for admission, and was disadvantaged by a specific and articulated admissions policy that reserved limited spaces for members of a particular ethnicity.

Had Bakke *never applied* to the medical school, he would not have suffered the type of personal and concrete injury that an actual applicant could incur. Instead, he would have been a bystander and his case would have been dismissed for lack of standing. *Food & Drug Admin. v. All. for Hippocratic Med.,* 602 U.S. 367, 379, 144 S. Ct. 1540,

- 43 -

1554, 219 L. Ed. 2d 121 (2024).

Plaintiff's members are on similar footing as a non-applicant in the context of *Bakke*. Though, in this case, Plaintiff has not alleged the existence of any competitive process, any limit on the number of participants, any race-based quota or any other race- or ethnicity-based set-aside for participants. Instead, Plaintiff presents a straightforward bystander claim on behalf of individuals that have not been personally impacted or affected by the existence of the A4 programs, nor by the claimed marketing deficiencies. The members and their children are observers of the A4 programs—not ready and able participants--who claim only that they *would likely* or *would* be interested in the programs, but have not, to date, sought admission, participation or access. It alleges no concrete and particularized injury, advancing only a bystander grievance about a government program generally.

Plaintiff takes its misconstruction of the principle stated in *Bakke* into its discussion of *Northeastern Fla. Chapter, Associated Gen. Contractors of Am. V. City of Jacksonville*, where it claims that the injury "comes from 'the denial of equal treatment resulting from the imposition of the barrier' not the loss of access to any benefit." AOB

- 44 -

56401214.10/005801.00590

at 17. Plaintiff argues that the "injury attaches when the contractor loses the ability to bid on 'equal footing,' not when they lose out on the contract." *Id.*

Again, however, Plaintiff is citing a case where a plaintiff was "ready and able" as evidenced by its active participation in a competitive process that involved a formal race-based set-aside. In the *Jacksonville* case, it was the public contracting process as impacted by a city "Minority Business Enterprise Participation" program, where 10% of the amount spent on city contracts was set aside for minority business enterprises. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 508 U.S. at 658; ER-95. The inquiry in these cases relates to the "inability to compete on an equal footing." *Texas v. Lesage*, 528 U.S. 18, 21 (1999). This again presumes that the plaintiff is actually *competing* in the program, not passively *observing* the existence of the program.

In the context of *Jacksonville*, Plaintiff's members are more akin to non-participating potential public contractors—those who have not sought to compete for the contracts, do not have a "personal stake" in the result of the competition, and are otherwise not personally impacted by the operation of the challenged policy, practice or other act. The

- 45 -

56401214.10/005801.00590

"inability to compete on equal footing" necessarily requires a plaintiff to be *in* the competition. Article III does not afford standing to those uninvolved in the competitive process or otherwise closed system where the challenged rule is being applied (i.e. concerned bystanders).

Active participation in the competitive process, and subjection to the imposition of an actual race-based barrier to the party's detriment, is what particularizes an alleged injury and can give rise to an injury-in-fact for Article III purposes. Plaintiff argues that none of its cited cases "tie the injury to the presence of a competitive process." AOB at 18. However, this argument is in direct conflict with Plaintiff's argument, and the cases it relies upon, in the immediately preceding paragraph of its Opening Brief. *Id.*, (describing the standing of plaintiffs in *Parents Involved in Cmty. Sch. V. Seattle Sch. Dist. No.* 1, 551 U.S. 701, 719 (2007), where students "forced to '<u>compete</u> in a race-based system that may prejudice' them" and *Bras* where rigid quotas make it impossible for them to <u>compete</u> for any given benefit. Rather they need only show that they are forced to <u>compete</u> on an unequal basis.") (emphasis added).

While Plaintiff may be able to articulate a generalized grievance over non-competitive A4 programs its members have not sought to

- 46 -

56401214.10/005801.00590

engage in, this is insufficient to establish that "personal and concrete" injury required for Article III standing. *Lujan v. Defs. of Wildlife,* 504 U.S. at 555; *Meland v. WEBER*, 2 F.4th 838, 844 (9th Cir. 2021). Further, there must be an actual "barrier" to equal access or participation, something notably lacking in the Complaint allegations.

Finally, Plaintiff relies on *Harrison v. Kernan,* 971 F.3d 1069 (9th Cir. 2020), for the premise that the "injury" in equal protection claims is "denial of 'equal treatment under the law' *regardless* of whether any 'tangible benefit' is at stake." AOB at 18. Plaintiff argues that "the injury was being subjected to a discriminatory rule that governed access on unequal terms." *Id* at 18-19.

Again, Plaintiff ignores the context of the case, which involved formal regulations applicable to a general prison population that mandated separate property schedules for male and female inmates. There, the plaintiff alleged that the challenged regulation "'prohibit[s him] from purchasing those vendor products the same and equal to those vendor products allowed to similarly situated female prisoners, as well as allowed to those female prisoners of demonstrated greater security risk than [Harrison]." *Harrison*, 971 F.3d at 1073–74.

During his administrative appeal through the prison's grievance

- 47 -

system, Harrison "asked 'to be authorized to order, receive, possess, and use' items including 'clothing, food, drinks, objects, [and] products' available via the prison's vendors 'without regard to my gender or any type of 'women only' restrictions.'" *Id*. at 1074. In his Complaint, Harrison included as exhibits the specific items that he was unable to purchase, but female prisoners were allowed to purchase. The Court, in finding that Harrison had standing, described Harrison as follows: "As a long-term inmate subject to California prison regulations on an ongoing basis, Harrison presumably stands <u>ready and willing</u> to order women-only items if permitted." *Ibid.* (emphasis added).

The facts of *Harrison* are distinguishable from the instant matter. First and foremost, the plaintiff in *Harrison* was an inmate in the state prison system. This custodial confinement, and subjection to prison regulation as a matter of daily life, necessarily limits the potential group of individuals directly and personally impacted by prison policies and administrative actions.

Second, he was subjected to an actual prison regulation that treated men and women differently without regard to other criteria, such as dangerousness, as it related to their ability to access items within the prison system. Unlike the instant case, *Harrison* involved a formal

- 48 -

56401214.10/005801.00590

regulation that treated groups of inmates differently based on sex. There is no policy or regulation alleged in this matter that limits or restricts access to products (or programming) in any manner, and no allegation that such policy or regulation has been actually applied to Plaintiff's members' children. Indeed, Plaintiff does not allege that any barrier actually exists to its members' participation beyond their own subjective feeling of unwelcomeness, which is unsupported by any alleged fact.

Third, the *Harrison* plaintiff took affirmative steps to demonstrate he was "ready and able" to place supply orders. In the prison grievance process, he specifically requested a variance from the policy to allow him equal access to property catalogue. *Id.* at 1074. Such a request is analogous to an "application" in that the plaintiff petitioned the responsible agency for a sought-after benefit. *See Madsen*, 976 F.2d 1220.

Here, however, Plaintiff has failed to allege that any member or their child applied to the program, sought to access any benefit, petitioned the District in any manner, or was "ready and able" to participate in the A4 programs. Plaintiff cannot allege it was harmed where it failed to allege any facts establishing that its members actually

- 49 -

56401214.10/005801.00590

sought entry, access, or participation in the A4 programs.

In *Jacksonville*, *Bakke*, and *Bras*, there was a formalized and legislative barrier to equal participation in the competitive process, whether through city ordinance, admission policy at a public university, or state law. In *Harrison*, there was a formalized regulatory barrier to equal access to a limited number of items (i.e. the products available in the prison property catalogue). Plaintiff pleads no such barrier in this case—no policy, ordinance, or regulation that prohibits non-African American students from participating in A4 programs.

Even if such a policy existed, "[t]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002). The only barrier to Plaintiff's members' participation is their volition and interest.

Plaintiff seeks to ignore this, and claims that simply being within a "race-based governmental framework which puts them at some kind of disadvantage" is enough. AOB at 19. This ignores the longstanding precedent, as articulated in *Lujan*, that an injury must be particularized and concrete, and actual or imminent, not conjectural or hypothetical.

- 50 -

56401214.10/005801.00590

Plaintiff alleges nothing that distinguishes the six members' children from the other approximately 65,814 non-African American students enrolled at the District.

Plaintiff's formulation ignores the injury-in-fact requirement, and posits that "some kind of disadvantage" (not a particular kind of disadvantage) is sufficient to establish Article III standing. Even accepting such an incorrect erosion of Article III's standing requirement, Plaintiff has failed to allege that any members have been placed within, and personally subjected to, a race-based governmental framework – and certainly have not pleaded any actual disadvantage or harm.

At most, Plaintiff alleges that the A4 programs exist, its members did not receive enough outreach, and even if they did, they would not feel welcome. It ignores that, with the knowledge required of the members to file the Complaint, those members and their children still have not sought to access the program, have not been denied access to any educational benefit, have not been actually disadvantaged in any articulable manner, or suffered any other harm. Instead, they present a generalized grievance that is untied to any *de facto* injury.

Speculative injury of future harm and voluntary exclusion are

- 51 -

56401214.10/005801.00590

insufficient to create an injury-in-fact. As such, the District Court's findings should be affirmed.

**2.      The Complaint Fails to Plead any Actual or Imminent Injury, and Advances Only Conjecture and Hypothesis**

Under any of the ways Plaintiff frames its alleged injury, it is unable to establish that its "injury" is either actual or imminent, and instead presents solely as conjecture and speculation.  At most, the Complaint alleges a speculative future harm concerning access to a program that Plaintiff's member's children have never sought to access. This is insufficient to meet Article III's injury-in-fact requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. at 555.

Plaintiff argues that its Complaint alleges an "injury" in the form of "unequal treatment as to the access pathways themselves."  AOB at 29.  However, the Complaint fails to allege any fact establishing or suggesting that the access pathways to the A4 programs are limited in any way.  There needs to be some *de facto* injury actually occurring, or imminently occurring, for there to be an injury-in-fact.  Without an actual or imminent injury, the complained of conduct is, at most a future "injury-in-theory."

- 52 -

In its Opening Brief, CFER disclaims that it is pursuing a deterrence theory based on the program marketing.  AOB at 29. ("CFER does not allege a subjective chill or a perception-based reluctance to participate in a government-sponsored program…The injury is not psychological deterrence.").  For this reason, it argues it is excused from alleging any attempt to participate in the programs or that doing so would have been a futile gesture.  *Id.* at 29-30.

By disclaiming any "futile gesture" or "deterrence" theory, Plaintiff places its claims squarely within the *Madsen* line of cases and the well-established rule that an application for a sought-after benefit is required for standing.  *Madsen*, 976 F.2d. at 1221-22; *Friery v. Los Angeles Unified Sch. Dist*., 448 F.3d 1146, 1149-50 (9th Cir. 2006).  "A central reason for this requirement is to ensure that the challenged policy actually affected the person challenging it."  *United States v. Baugh*, 187 F.3d 1037, 1042 (9th Cir. 1999).  Without applying to the challenged programs, Plaintiff cannot establish any actual or imminent injury.

As Plaintiff concedes, its members never attempted to access the programs.  AOB at 30.  Plaintiff argues that it does not need to allege any attempt to access because Plaintiff seeks to establish an injury

- 53 -

56401214.10/005801.00590

*before* any "application stage," notwithstanding its failure to allege any facts suggesting that an application stage (or any other screening mechanism for participation) exists for the A4 programs. *Id.*

Plaintiff's description of when the alleged injury occurred would be more accurately framed as the "speculation stage," where the "injury" is potential, but not actual and certainly not imminent. Plaintiff incorrectly relies on both *Jacksonville* and *Teamsters* for this misguided premise.

In the context of *Jacksonville*, Plaintiff's argument is akin to alleging that the "injury" occurred when city ordinance establishing the Minority Business Enterprise set-aside was enacted, prior to (and without regard) to any actual competitive contracting process. Such a formulation does not require the existence of an actual party, as this theory of "injury" does not require an "injured." Without a party, there can be no case or controversy, and without an injury, there can be no standing.

Applying such a standard, the Court would be routinely called upon to provide prospective advisory opinions about how a challenged program *might* operate and adjudge injuries that may or may not ever occur. This stands in direct conflict with controlling precedent

- 54 -

56401214.10/005801.00590

concerning the Court's limited jurisdiction and gatekeeping function, requiring the Court to adjudicate hypothetical disputes. *See Raines*, 521 U.S. at 818. Plaintiff's formulation of its stated injury is, transparently, a prospective and speculative injury-in-theory, and is insufficient to establish an injury-in-fact.

As to *Teamsters*, Plaintiff's broad stroke reliance is misplaced. Contrary to Plaintiff's assertion at page 29 of its Opening Brief, *Teamsters* does not stand for the premise that "discrimination occurs when opportunities are advertised and made available to some but not others" nor does it broadly excuse a non-applicant from establishing that it suffered the "injury-in-fact" just as an applicant would be required to.

*Teamsters* addressed, among other issues, whether a non-applicant in an employment discrimination case could be afforded seniority-based relief under the remedial provisions of the Civil Rights Act of 1967. In its prior decision in *Franks v. Bowman Transp. Co. Inc*, 424 U.S. 747 (1976), the Supreme Court found that, in a class action employment discrimination case involving a class of "identifiable applicants who were denied employment…after the effective date of Title VII[,]" that granting seniority relief to individuals

- 55 -

Case: 25-7510, 04/08/2026, DktEntry: 15.1, Page 57 of 77

who were discriminated against was an appropriate remedy. *Franks* did not address the entitlement of non-applicant employees to such relief, and thus it was an open question of whether seniority relief may be awarded to non-applicant employees in employment discrimination cases. *Teamsters,* 431 U.S. at 363.

The *Teamsters* Court found that an incumbent employee's failure to apply for a job was not "an inexorable bar to an award of retroactive seniority." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 364, 97 S. Ct. 1843, 1869 (1977) (emphasis added.). Instead, the Court found that "[i]ndividual nonapplicants must be given an opportunity to undertake their difficult task of proving that they should be treated as applicants and therefore are presumptively entitled to relief." *Teamsters*, 431 U.S. at 364 (emphasis added).

The Court did not say that, in all cases, a non-applicant has standing and is excused from demonstrating a particularized harm— indeed, it specifically disavowed such a stance, stating "[t]o conclude that a person's failure to submit an application for a job does not inevitably and forever foreclose his entitlement to seniority relief under Title VII is a far cry, however, from holding that nonapplicants are always entitled to such relief." *Teamsters,* 431 U.S. at 367.

- 56 -

56401214.10/005801.00590

Instead, "A nonapplicant must show that he was a potential victim of unlawful discrimination." *Ibid*. The Court found that a nonapplicant necessarily alleges that they were deterred from applying because of the employer's discriminatory practices, and that the non-applicant has the "not always easy burden" of proving that they would have applied had it not been for those practices. *Ibid*. As Plaintiff has disclaimed any theory of the case based on deterrence, its reliance on *Teamsters* is entirely misplaced.

The Court, in discussing why a non-applicant should have the opportunity to demonstrate that they should be treated as applicants, did not relieve the non-applicant of their "difficult task" of establishing a particularized, concrete and actual injury, nor did it attempt to loosen the constitutional standing requirements of Article III. In this case, Plaintiff had the opportunity to meet its difficult task by pleading sufficient facts to demonstrate an injury-in-fact, and the District Court correctly found that it did not do so.

Plaintiff relies on "… only 'some day' intentions that do not support a finding of actual or imminent injury." *Feezor v. Sears, Roebuck & Co.*, 608 F. App'x 476, 477 (9th Cir. 2015) (internal citations and quotation marks omitted). The Complaint allegations, and

- 57 -

56401214.10/005801.00590

Plaintiff's argument in its Opening Brief, demonstrate that any theoretical injury that could be incurred by Plaintiff's members' children is remote, speculative and hypothetical—and insufficient to establish Article III standing.

Accordingly, the District Court was correct in finding that Plaintiff failed to plead sufficient facts establishing that its alleged injury was actual or imminent, nor that any threatened injury was certainly impending. ER-77-79.

## B.     Traceability

The District Court properly found that the Complaint failed to allege the required causation between the alleged actions and the alleged harm. For a party to establish standing, "[t]here must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Lujan,* 504 U.S. at 560 (internal citation omitted).

Plaintiff fails to establish this second element of standing because it failed to establish an injury-in-fact—the first required element of standing. *Ibid.*  Without an injury-in-fact, there is no causal

- 58 -

56401214.10/005801.00590

connection between a defendant's action and an absent injury.

The District Court noted that Plaintiff argued in its opposition to the Motion to Dismiss that the "injuries" can be fairly traced to Defendants because "Fresno Unified promulgated and enforces the challenged policies." However, the Complaint itself is devoid of any allegations concerning the promulgation of any policy, whether any of its members were subject to any such policy, that the District "enforced" such a policy, whether such "enforcement" was at the direction of the District Superintendent or its Board President, and what that "enforcement" consisted of. Accordingly, there are no pleaded facts establishing any causal chain between the defendants and the complained-of "injury" based on the existence or enforcement of any policy, resolution, or regulation.

Because the Complaint failed to allege sufficient facts to establish the second required element of standing, the District Court properly dismissed the Complaint.

## C. Redressability

The third and final element to establish standing is that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan,* 504 U.S. at 561. In its

- 59 -

56401214.10/005801.00590

Complaint, Plaintiff sought declaratory relief and an injunction prohibiting Defendants from "using race in any manner in operating, funding, advertising, or admitting students into the A4 Office programs, and requiring Defendants to provide notice an equal outreach to all eligible students regardless of race." ER-136.

As set forth above, Plaintiff failed to plead any injury-in-fact in its Complaint. As with the question of traceability, the absence of an injury-in-fact renders a claim non-redressable. The Complaint's principal grievance relates to the marketing of the A4 programs-it does not allege that any of Plaintiff's members have been denied access to the A4 programs on the basis of race. Plaintiff's prayer for an injunction concerning the operation, funding and advertising amount only to a generalized, unparticularized grievance.

The District Court found that Plaintiff failed to plead any facts demonstrating that the members' children "are actually eligible to participate in any A4 program based on age or demonstrated need, that they would actually benefit from the programs, or that any of the members would 'stand to profit in some personal interest' if there was a favorable decision by the Court." ER-86.

Accordingly, granting the relief requested in the Complaint

- 60 -

would not serve to redress any injury-in-fact. At most, the requested injunction would resolve the generalized grievance concerning program marketing, completely detached from any injury-in-fact or other matter pleaded in the Complaint. This amounts to an inappropriate advisory opinion, which the Court should decline to provide. *Carney*, 592 U.S. at 58.

As indicated above, the Complaint makes no allegations of any actual exclusion from A4 program participation, any actual policy limiting admission or participation to students of a particular race, or any other barrier that stands in between Plaintiff's members' children and the complained-of programs.

Further, as the District Court correctly notes, the Complaint does not make any factual allegations concerning program eligibility, demonstrated need or academic underperformance that could be served by any one of the 13 programs, that the program would provide a sought-after benefit, or that they have any other personal interest in the programs.

Because Plaintiff failed to plead an injury-in-fact, it cannot satisfy the redressability requirement for standing.

## II. <u>Ripeness</u>

The District Court correctly found that, separate and apart from standing, this matter was not ripe for adjudication. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal citations and quotation marks omitted.).

Here, the Complaint presents a hypothetical and speculative theory of injury without any materialized facts pleaded in support. As an initial matter, each of Plaintiff's member's children are alleged to have a conditional interest in the A4 programs—they either "would be" or "would likely be" interested in the programs. ER-131. It does not plead that they "are" interested, that they wish to participate, nor does it plead any facts establishing that they have demonstrated their interest through any overt act, such as applying, seeking admission or participation in any program, or petitioning the District in any way. It further fails to plead any actual, personal, concrete harm flowing to the members' children as a result of the conduct alleged in the Complaint.

What Plaintiff seeks from the Court is an advance declaration of rights concerning a fact pattern that has yet to materialize. It seeks the

- 62 -

56401214.10/005801.00590

Court's recognition of a speculative and prospective "harm," well in advance of any actual injury and based on a generalized, undifferentiated grievance concerning the marketing of certain District programs. This is insufficient both for standing purposes and to establish ripeness. *See e.g. Meland v. WEBER*, 2 F.4th 838, 844 (9th Cir. 2021); *Buono v. Norton,* 371 F.3d 543, 547 (9th Cir. 2004) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, (1982)).

Because the Complaint fails to present a ripe controversy, the District Court's Order dismissing the Complaint for lack of ripeness should be affirmed.

### III.   The Court Properly Took Notice of the District's Website But Did Not Rely on It to Dismiss the Complaint

The Court properly took judicial notice of the District's A4 website, as it was incorporated into the Complaint by reference and relied upon heavily by Plaintiff in alleging its causes of action. ER-72.

Plaintiff takes issue with the District Court taking "judicial notice of the statistics provided by the A4 website presenting this information, as well as the statistics cited from the A4 website in Defendant's Opposition." ER-72. Plaintiff's principal argument is its

- 63 -

unsubstantiated assertion that the statistics were added to the website after the case was filed, and that the Court improperly considered the statistics to be true. AOB at 33.

**A.** **Judicial Notice was Proper Because the Content of the District's Website is Central to Plaintiff's Complaint Allegations**

Plaintiff concedes that it "cited the Fresno Unified/A4 website for program descriptions and branding—i.e. to show that Defendants were telling the public about who the programs were 'for.'" AOB at 31; ER-133.

Plaintiff therefore concedes that the website content as it relates to the A4 program "forms the basis of [its] claim" and, as such, the website content was incorporated by reference. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003). "[A] court 'may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 900, F.3 988, 1003 (9th Cir. 2018). As such, at the pleading stage, it was proper for the Court to consider the statistics accompanying the A4 program description when ruling on a Rule 12 motion to dismiss.

- 64 -

Consistent with Plaintiff's stated purpose—to show what the District was telling the public about the program—the Court properly noticed the content of the website, which also said "A4 has served 7,950 students of all racial and ethnic backgrounds." ER-56. This statement also demonstrates who the programs are "for"—namely, students of all racial and ethnic backgrounds.

Plaintiff seeks to exclude this information because it stands in stark contrast to the allegations they advance and undermines their theory that the A4 programs would not welcome their members' students. Plaintiff seeks to enjoy the presumption of truth afforded to Complaint allegations on a Rule 12(b) motion, while disavowing itself of the presumption of truth afforded to documents incorporated into the Complaint. AOB at 33 (arguing, "[b]y taking judicial notice of those statistics for their truth, the court allowed Defendants to supplement the jurisdictional record with a self-serving factual narrative on a facial 12(b)(1) motion.").

However, the entire Complaint—including the incorporated documents—enjoy a presumption of truth at the Rule 12 stage. *Khoja v. Orexigen Therapeutics, Inc.*, 900, F.3 at 1003. It was Plaintiff that incorporated the website into its Complaint. Plaintiff cannot excise the

- 65 -

portions of the website that are inconvenient to its argument. On one hand, Plaintiff would accept the Court taking as true the allegations it believes demonstrate that A4 Programs are "for" a particular racial group. On the other, it protests the Court taking as true the remainder of the description stating that the A4 program has served students from all races and ethnicities. Plaintiff cannot have it both ways.

Notwithstanding the propriety of the Court treating incorporated documents as true for purposes of a Rule 12(b) motion, the "truth" of the website content is not particularly dispositive to resolve the standing question. As Plaintiff argues, it sought to incorporate the website to demonstrate what the District was advertising as it relates to the A4 programs. AOB at 31; ER-133. The question of truthful advertising was not before the District Court and is not properly before this Court.

Instead, it is sufficient to determine that the Court's notice of the website content was proper, considering Plaintiff's reliance thereon in advancing its causes of action. *United States v. Ritchie* 342 F.3d at 908; *Khoja v. Orexigen Therapeutics, Inc.*, 900, F.3 at 1003. Without needing to reach the truth of the matter, judicial notice of the website content provided the Court, at most, with a more complete picture of the alleged website marketing in light of the Complaint allegations.

- 66 -

The District Court's taking of judicial notice was proper and should not be disturbed on appeal.

B.   **Plaintiff Waived Its Argument Concerning the Presence of Statistics on the District's A4 Program Page**

The Court should disregard Plaintiff's arguments concerning the alleged changes to the content of the A4 Website because it waived the argument below, and the argument is unsupported by fact.

Plaintiff has no factual basis to allege, or represent as true, that the website content changed after the Complaint was filed.  ER-30-32. Plaintiff relies exclusively on two screen captures from the Wayback machine as its evidence in support of its assertion—one from December 5, 2024 and one from March 2025.  ER-51.

However, the requisite factual support for the allegation that "the 'statistics' were added to the website by Defendants *after* the case was filed…" is not whether the website changed between December 2024 and March 2025—it is whether it changed between the time of filing on February 27, 2025 and the time of the Wayback Machine screen capture on March 22, 2025.

While Plaintiff alleges that the website changed, the far more

- 67 -

likely explanation is that Plaintiff neglected to check the A4 website before it filed its Complaint, and now recognizes that it should have done so. Plaintiff's attempts to correct its prior oversights should not be entertained by this Court, especially when it had ample opportunity at the District Court to address this issue and chose not to do so.

In Defendants' Motion to Dismiss, it argued that "…Plaintiff demonstrates knowledge of the programs by alleging their existence and incorporating the prominent and public District website containing program descriptions and reports that the A4 program serves all racial and ethnic groups." ER-125.

Plaintiff did not contest this statement in its Opposition to the Motion to Dismiss, going so far as to reproduce the quote that the A4 program "serves all racial and ethnic groups." ER-112. In Defendants' reply, it was noted that the incorporated website content demonstrated that the A4 program served 2,750 more students than the entire African American population at Fresno Unified. ER-92.

In seeking reconsideration of the District Court's dismissal, Plaintiff argued, unpersuasively, that there was "newly discovered evidence" While Defendants clearly raised the issue of the website content in its Motion to Dismiss, Plaintiff did not challenge it in its

- 68 -

Opposition, and instead sought reconsideration on the grounds that the website content was raised for the first time in a Reply. ER-41.

The District Court found that Plaintiff could have sought leave to file a surreply, but did not do so. ER-12. Accordingly, Plaintiff had the opportunity both in its Opposition, and through seeking leave to file a surreply, to preserve this issue for appeal. Having neglected to address this argument in either fashion at the district court, Plaintiff has waived this argument on appeal.

## C. The District Court's Findings on Standing are Independent of the Website Content

Regardless of any judicial notice, the District Court would have reached the same conclusion regarding standing and ripeness and dismissed the Complaint.

As discussed, the Complaint, on its own, failed to allege any injury-in-fact, traceability, and redressability prongs to establish standing. The District Court was clear in explaining that "[t]hese grounds for the Court's ruling were not dependent upon the statistical information found on the website for the A4 programs." ER-11.

Independently, the Court found that Plaintiff failed to show that

- 69 -

the claims were ripe for adjudication, as they were "contingent on a number of factors that may or may not occur," and Plaintiff failed to plead any facts concerning the hardship that would be faced by its members' children from not participating in the A4 program.  ER-11.

The statistics referenced in the record are not necessary to recognize that Plaintiff has failed to plead any actual injury to its members' children.  The statistics may underscore the facial deficiencies of the Complaint, but the deficiencies exist within the Complaint itself—not because of incorporated content.

The Court may affirm the District Court's order on any grounds appearing in the record.  *Tritz.*, 721 F.3d at 1136; *Wilbur v. Locke*, 423 F.3d 1101, 1105 (9th Cir. 2005), abrogated on other grounds by *Levin v. Com. Energy, Inc.*, 560 U.S. 413 (2010).   The record here demonstrates the District Court focused its analysis on the deficient fact pleading in the Complaint and Plaintiff's failure to establish the essential elements of standing. Judicial notice of the website served only to underscore those findings, not as evidence in support of the findings.

The District Court's findings concerning the deficiencies in the Complaint stand on their own, without regard to the matters judicially

- 70 -

56401214.10/005801.00590

noticed. Because sufficient grounds exist in the record to affirm the District Court's order, this Court should affirm the dismissal.

## IV.    In the Alternative, The Claim is Moot

Plaintiff failed to satisfy Article III's standing requirement, and has failed to satisfy the case and controversy requirement to invoke federal court jurisdiction, by failing to allege an injury-in-fact, traceability, redressability and a ripe controversy.  However, and in the alternative, even if the Court were to find that Plaintiff alleged sufficient facts to establish both standing and a ripe controversy, the Appeal should be dismissed as moot.

The District's A4 Program is now known as the Office of Advancing Academic Acceleration and Achievement.  The website marketing of the A4 program clearly states "our initiatives are designed to provide academic and social emotional support to all students across Fresno Unified School District."[3]

"The test for mootness of an appeal is whether the appellate court can give the Plaintiff any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter

---

[3] https://www.fresnounified.org/departments/a4 (last Accessed March 26, 2026)

56401214.10/005801.00590

is not moot." *In re Thorpe Insulation Co.*, 677 F.3d 869, 880 (9th Cir. 2012). To the extent Plaintiff seeks a declaratory judgment concerning a program that no longer exists, the Court should decline to exercise jurisdiction as it cannot grant any effective relief regarding a defunct program. Similarly, to the extent seeks an injunction premised on a program that no longer exists, there is nothing to enjoin, and the Court is unable to grant relief on the merits of Plaintiff's case.

"The doctrine of prudential mootness permits a court to 'dismiss an appeal not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief....'" *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir. 2014).

Here, the A4 Program has evolved since the Complaint was filed, and Plaintiff's claims are now moot. Should Plaintiff have any remaining challenge to the District's programming, it must address the circumstances as they exist now—not as they were when the Complaint was filed. Any court relief concerning the now-defunct programs would seek to enjoin the operation or marketing of programs that are no longer in operation, rendering the relief ineffective.

Accordingly, for both constitutional and prudential mootness

- 72 -

considerations, the appeal should be dismissed.

## CONCLUSION

The District Court properly dismissed the Complaint for lack of standing and ripeness. The Complaint failed to allege an injury-in-fact, traceability, redressability, or a ripe controversy and instead advanced only a speculative future "injury-in-theory."

Plaintiff's attempts to loosen Article III's standing requirements should be rejected, and the District Court dismissal should be affirmed.

April 8, 2026                         Respectfully submitted,


By: _/s/ Michael J. Davis_____
     Michael J. Davis, SBN 299196
     Camille J. Bosworth, SBN 242466

*Attorneys for Defendants-Appellees Misty Her and Valerie F. Davis*

- 73 -

- 74 -

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Number: 25-7510**

The undersigned attorney states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature:** _/s/ Michael J. Davis_          **Date:** April 8, 2026

- 74 -

56401214.10/005801.00590

## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

### 9th Cir. Case Number(s)  25-7510

I am the attorney.

This brief contains 12,549 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). [no more than 13,000 words OR monospaced face and no more than 1300 lines of text (FRAP 32)]

I certify that this brief:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties;

[ ] a party or parties are filing a single brief in response to multiple briefs; or

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature: /s/                               Date:  April 8, 2026

- 75 -

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 25-7510

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address):*

**Description of Document(s)** *(required for all documents)*:

Defendants-Appellees' Answering Brief

**Signature** | /s/ Trevor Anderson  **Date** | April 8, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**      *Rev. 12/01/2018*